Bryan J. Freedman, Esq. (CAL. SBN 151990)*
Brian E. Turnauer, Esq. (CAL. SBN 214768)*
FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Telephone:  (310) 201-0005
Facsimile:  (310) 201-0045
E-mail:  BFreedman@ftllp.com
           BTurnauer@ftllp.com

Hector J. Carbajal II
Nevada Bar No. 6247
CARBAJAL LAW
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 846-0040
Facsimile: (702) 846-1329
E-mail: hector@claw.vegas

*Attorneys for Plaintiff Terence Crawford*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TERENCE CRAWFORD, an individual. ) | Case No.:  2:22-cv-00081-APJ-EJY |
| ) | |
| Plaintiff, ) | |
| ) | |
| TOP RANK, INC., a Nevada corporation; ) | **MOTION FOR REMAND** |
| and Does 1 through 20, inclusive, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

COMES NOW Plaintiff Terence Crawford (herein "Plaintiff" or "Crawford"), by and through their undersigned counsel, and move this Honorable Court, pursuant to 28 U.S.C. §§ 1332(a), 1441(b), and 1447(c), to remand this case back to the Eighth Judicial District Court of the State of Nevada.

This motion is based on the grounds that Defendant has failed to meet its heavy burden of establishing jurisdiction based on diversity of citizenship.  Defendant Top Rank, Inc. (herein

"Defendant" or "Top Rank") is the only Defendant specifically identified in the action.  Defendant Top Rank, Inc., is a Nevada corporation and subject to jurisdiction and suit in Nevada as a Nevada corporation.   In an impermissible attempt at forum shopping in the digital era, Defendant improperly ran to this forum to avoid being in state Court in Nevada prior to being served with the summons and complaint in what is commonly known as "snap removal."  Defendant's removal in this manner is entirely improper as this Court and several other Judges in the United States District Court, District of Nevada have repeatedly found.  Accordingly, this action should be remanded to the Eighth Judicial District Court, Clark County, Nevada, where it was appropriately brought by Plaintiff and where Defendant is appropriately subject to jurisdiction in Nevada State Court as a Nevada Corporation.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Mr. Crawford filed this action on January 12, 2022 in the Eighth Judicial District Court, Clark County, Nevada, Case No. A-22-846568-B for breach of contract and other related claims (herein "Comp.").  *See* DKT 1, at Exhibit A.  On January 15, 2022, Top Rank filed its Petition of Removal prior to having been served with the Summons and Complaint. *See* DKT 1.  Top Rank admits in its Petition of Removal that it filed the same prior to being served with the Summons and Complaint.  *See* DKT 1, ¶ 6 and supporting Declaration of Top Rank's General Counsel Jeremy Koegel in Support of Petition for Removal, at ¶¶ 3-5.  Top Rank was served with the Summons and Complaint on January 24, 2022.  *See* DKT 6.  This Court on multiple occasions, and other courts within this jurisdiction, have unanimously ruled that this tactic, known as "Snap Removal," is procedurally improper.  *See Deutsche Bank v. Fidelity*, No. 2:20-CV-01606-APG-

BNW, 2020 WL 7360680 *2-3 (D. Nev. Dec. 14, 2020).[1]   Top Rank was required to wait until it was served prior to seeking removal in the first instance, had it done so there would have been no basis for it to remove the action.   At least one defendant has to be served before seeking removal.   *See* fn. 1. Top Rank's removal was therefore procedurally defective.

This case must be remanded to state court based on the forum defendant rule.  Mr. Crawford is also entitled to an award of costs and fees under 28 U.S.C § 1447(c).

## II.   FACTUAL BACKGROUND

### A.   The Complaint and Its Removal by Top Rank to Federal Court.

Mr. Crawford filed a Complaint against Top Rank in the Eighth Judicial District Court, Clark County, Nevada on January 12, 2022.  Comp. at p.1.  On January 15, 2022, Top Rank filed its Petition of Removal prior to having been served with the Summons and Complaint. *See* DKT 1.  Top Rank admits in its Petition of Removal that it filed the same prior to being served with the Summons and Complaint.  *See* DKT 1, ¶ 6 and supporting Declaration of Top Rank's General Counsel Jeremy Koegel in Support of Petition for Removal, at ¶¶ 3-5.  Top Rank was served with the Summons and Complaint on January 24, 2022.  *See* DKT 6.

### B.   Mr. Crawford's Professional Boxing Background.

Mr. Crawford is the preeminent welterweight professional boxer of his generation with a

---

[1] *Carrington Mortgage Services, LLC v. Ticor Title of Nevada,* 2020 WL 3892786, 2:20-cv- 699-JCM NJK (D. Nev. 2020); *Wells Fargo Bank, N.A. v. Old Republic Title Ins. Grp., Inc*., No. 2:20-CV-1461-JCM-NJK, 2020 WL 5898779, at *2 (D. Nev. Oct. 5, 2020); *Deutsche Bank v. Fidelity*, No. 2:20-CV-01606-APG-BNW, 2020 WL 7360680 *2-3 (D. Nev. Dec. 14, 2020); *HSBC Bank v. Old Republic*, No. 2:20-CV-01838-APG-VCF, 2020 WL 7360679 *3 (D. Nev. Dec. 15, 2020); *U.S. Bank v. Fidelity*, No. 2:20-CV-01367-APG-DJA, 2020 WL 7335412 *3 (D. Nev. Dec. 14, 2020); *Wells Fargo v. Fidelity*, 2:20-CV-01849-APG-NJK, 2020 WL 7388621 *3 (D. Nev. Dec. 15, 2020); *HSBC Bank v. Fidelity National Title Group, Inc., et al.,* Case No. 2:20-cv-01515-JAD-BNW, 2020 WL 7625233, at *3 (D. Nev. Dec. 22, 2020) and *U.S. Bank Trustee National Association v. Fidelity National Title Group, Inc., et al.*, Case No. 2:20-cv-02068-JCM-VCF (D. Nev. Jan. 22, 2021).

professional record of 38 wins (29 by way of knock-out), 0 losses and 0 draws.  Comp. ¶ 2.  He has held multiple world championships in three weight classes, including the World Boxing Organization ("WBO") welterweight title since 2018.  Comp. ¶ 2.  Previously, Mr. Crawford held the WBO and Ring magazine lightweight titles from 2014 to 2015; and the unified World Boxing Association ("WBA") (Super), WBC, International Boxing Federation ("IBF"), WBO and Ring light welterweight titles between 2015 and 2017.  Comp. ¶ 2.  Mr. Crawford became the first male boxer to simultaneously hold all four major world titles in boxing (WBA, WBC, IBF and WBO) since Jermain Taylor in 2005, and is one of only six male boxers in history to do so.  Comp. ¶ 2.  As of January 2022 when this Complaint was filed, Mr. Crawford is ranked as the world's second-best active boxer, pound for pound, by ESPN, third by Boxing Writers Association of America, and fourth by the Transnational Boxing Rankings Board ("TBRB"), BoxRec and The Ring magazine. Comp. ¶ 2.  He is also ranked as the world's best active welterweight by ESPN, BoxRec, and The Ring, and second by the TBRB.  Comp. ¶ 2.  Mr. Crawford was named Fighter of the Year by the Boxing Writers Association of America in 2014, and by ESPN in 2014 and 2017. Comp. ¶ 2.  Mr. Crawford is also a proud Black athlete.  Comp. ¶ 2.

### C.     Top Rank's Background and Promotional Relationship with Mr. Crawford.

Top Rank is a boxing promotion company founded and lead by Arum.  Comp. ¶ 3.  On or about 2011, Mr. Crawford signed a promotional rights agreement with Top Rank.  Comp. ¶ 33. On or about August 22, 2018, with approximately two years left on the prior promotional rights agreement entered into between Mr. Crawford and Top Rank, the parties entered into an Exclusive Promotional Rights Agreement whereby Top Rank continued to have the exclusive right to promote Mr. Crawford's services as a professional boxer.  Comp. ¶ 33.

### D.     Mr. Crawford's Claims Against Top Rank.

Mr. Crawford has sued Top Rank for Breach of Contract, Fraudulent Misrepresentation,

Negligent Misrepresentation, Breach of the Implied Covenant of Good Faith and Fair Dealing, and Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing. *See* Comp. generally. These are all state law claims against Top Rank appropriately brought against it by Mr. Crawford in state Court Nevada the state that Top Rank is incorporated in and clearly subject to jurisdiction.

In this action, Mr. Crawford seeks to right the wrongs inflicted on him by Top Rank. Comp. ¶ 8.  Top Rank has repeatedly breached its contracts with Mr. Crawford, and in fact defrauded him into entering agreements in the first place. Comp. ¶ 8.  Even while Top Rank openly criticized Mr. Crawford, it pushed him into agreeing to fight Egidijus Kavaliauskas—not because that was best for Mr. Crawford's career, but because Top Rank needed to fulfill its obligations to ESPN. Comp. ¶ 8.  To induce Mr. Crawford to agree to the Kavaliauskas bout, Top Rank fraudulently promised to arrange for Mr. Crawford to fight Errol Spence Jr. despite knowing that Top Rank could never deliver the promised match. Comp. ¶ 8.  Top Rank also failed to deliver a promised second bout under the parties' promotional rights agreement. Comp. ¶ 8.

### III.   LEGAL STANDARD

To establish subject matter jurisdiction pursuant to diversity of citizenship, the party asserting jurisdiction must show complete diversity of citizenship among opposing parties. 28 U.S.C. § 1332(a). Section 1447(c) of Title 28, U.S.C. provides a vehicle whereby a litigant may obtain remand of a case to state court when the case has been improperly removed. *Gotro v. R& B Realty Grp.*, 69 F.3d 1485, 1487 (9th Cir. 1995). Section 1447(c) allows a party to seek remand on the basis of any defect other than lack of subject matter jurisdiction within thirty (30) days after the filing of the notice of removal, or at any time before final judgment if based on lack of subject matter jurisdiction. *Id.*

The standards governing removal are well established and stringent.  Removal is purely statutory right and removal status must therefore be strictly construed in favor of state court

jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-09, 61 S.Ct. 868, 872 (1941). The "burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is ***strictly construed against removal*** jurisdiction." *Prize Frize, Inc. v. Matrix Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999) (emphasis added). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Any doubt as to the right of removal is resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.; see also Nishimoto v. Federman–Bachrach & Assoc.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990); *Hopkinson v. Marrocco*, No. 2:19-CV-00358-JCMGWF, 2019 WL 3240015, at *1 (D. Nev. July 18, 2019);  *see also In re Business Men's Assurance Co. of America,* 992 F.2d 181, 183 (8th Cir. 1983).

### A.   Removal Was Improper Under 28 U.S.C § 1447(c).

#### i.   Top Rank is a Forum Defendant.

Top Rank removed this action based on diversity jurisdiction under 28 U.S.C. § 1332(a). Removal based on diversity is subject to the forum defendant rule found in 28 U.S.C. 1441(b)(2), which provides that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the [s]tate in which such action is brought." 28 U.S.C. § 1441(b)(2). Top Rank admits that it is a Nevada corporation with its principal place of business in Las Vegas, Nevada. ECF No. 1 at ¶3. As corporations are citizens of their states of incorporation and principal places of business, Top Rank is subject to the forum defendant rule, which precludes the court from exercising subject matter jurisdiction. *See Deutsche Bank,* 2020

6

WL 7360680 at *1-2 (citing § 1441(b)(2)).[2]

### ii.   Top Rank's Improper "Snap" Removal Tactic.

Under 28 U.S.C. § 1441, "[a] civil action otherwise removable solely on the basis of jurisdiction under Section 1332(a) [] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

Top Rank filed its Petition of Removal a mere three days after Mr. Crawford filed its Complaint and prior to it having been served with the Summons and Complaint.  This litigation tactic of attempting to remove actions from state court as quickly as possible before a plaintiff has had an opportunity to effectuate service  has become increasingly popular in recent years due, in part, to the increased use of electronic docket monitoring.  *See Delaughder v. Colonial Pipeline Co.,* 360 F. Supp. 3d 1372, 1377 (N.D. Ga. 2018); *Perez v. Forest Labs., Inc.,* 902 F. Supp. 2d 1238, 1243 (E.D. Mo. 2012) (noting the use of technology as a loophole to the forum defendant rule).  The so-called "snap removal" strategy is precisely what Top Rank employed in this case, removing three days after Mr. Crawford filed his Complaint in state court.  This tactic is contrary to Ninth Circuit precedent and other recent district court holdings, including the holdings from this Court.  It should be rejected.

### iii.   Top Rank's Snap Removal was Contrary to Ninth Circuit Precedent and This Court's Prior Rulings.

Under Ninth Circuit precedent, removal cannot be achieved in the presence of a forum defendant, even if that defendant has not been served. *Preseau v. Prudential Insurance* Co., 591 F.2d 74 (9th Cir. 1979); *see also Carrillo*, 2016 WL 1955145, at *2. In *Preseau*, the defendants removed to federal court on the day of trial following the plaintiff's dismissal of unserved "DOE"

---

[2]  *See also HSBC Bank*, 2020 WL 7360679 at *1-2; *U.S. Bank,* 2020 WL 7335412 at *1-2; *Wells Fargo*, 2020 WL 7388621 at *1-2.

defendants. The plaintiff challenged removal as untimely, arguing the citizenship of the non-forum defendants should have already been disregarded because they were unserved. The Ninth Circuit disagreed. The court explained "[a] nonresident defendant cannot remove a 'non-separable' action if the citizenship of any codefendant, joined by the plaintiff in good faith, destroys complete diversity, ***regardless of service or nonservice upon the codefendant***…" (quoting *Clarence E. Morris, Inc. v. Vitek*, 412 F.2d 1174, 1776 (9th Cir. 1969)) (emphasis added). The Ninth Circuit rejected the argument that section "1441(b), by implication, expanded removal jurisdiction to permit removal, despite want of diversity, if a resident defendant whose presence would defeat diversity had not been served." 591 F.2d at 78 (citing *Clarence E. Morris*, 412 F.2d at 1176, fn. 1). The Ninth Circuit held removal was improper because a forum defendant was named, regardless of whether it was served.  There is no reason why a different rule would apply here. "The case law is clear that a defendant who is a citizen of plaintiff's state destroys complete diversity, regardless of whether that defendant was properly served prior to removal." *Carrillo v. Long*, 2016 WL 1955145, at *2 (D. Nev. May 3, 2016)(emphasis added); *citing Jennings–Frye v. NYK Logistics Americas Inc*., No. 2:10–cv–09737, 2011 WL 642653, at * 3 (C.D.Cal. Feb.11, 2011) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 538 (1939); *Preaseau*, 591 F.2d at 78–79.

### iv. Alternatively, Removal was Defective Because No Defendant was Served.

Top Rank's removal was improper because no defendant had been served. *See e.g., Deutsche Bank*, 2020 WL 7360680 at *2-3 (*citing Gentile v. Biogen Idec, Inc.,* 934 F. Supp. 2d 313, 317-18 (D. Mass. 2013). Snap removal is a form of "gamesmanship" congress did not intend. Id. "The purposes underlying § 1441(b)(2) are better served by disallowing removal before any defendant is served." *Id. Carrington*, 2020 WL 3892786 *3 (holding in virtually identical litigation that "Top Rank's snap removal was procedurally defective because Top Rank removed this action before it was served."); *Wells Fargo Bank N.A.,* 2020 WL 5898779, at *2.

Under 28 U.S.C. § 1441(b), a civil action "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." The use of the word "any" in "any parties in interest properly joined and served" necessarily means "that the statute assumes at least one party has been served." 2020 WL 3892786 *3 (*citing Gentile*, 934 F. Supp. 2d at 316. "Ignoring that assumption would render a court's analysis under the exception nonsensical and the statute's use of 'any' superfluous." *Id* (internal citations omitted). Under the plain language of the statute, the lack of a party properly joined and served does not mean an "exception" to removal is inapplicable, but rather means that an even more basic assumption embedded in the statute—that a party in interest had been served prior to removal—has not been met. *Id.*[3]

It is also consistent with the well-established rule that "where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand". *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *see also Weeping Hollow Ave. Trust v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016) (noting the presumption in favor of remand where a resident defendant is named in a lawsuit).  Any questions about whether removal could occur before service should similarly be resolved in Mr. Crawford's favor.

### v.    Snap Removal Cannot Defeat Diversity In Any Action.

Even if Top Rank could remove before service, the statute would not allow that to defeat

---

[3] *See also Bowman v. PHH Mortg. Corp.,* 423 F.Supp.3d 1286, 1290 (N.D. Ala. 2019) (adopting the requirement that at least one party must be served before a snap removal); *D.C. by & through Cheatham v. Abbott Labs. Inc*., 323 F.Supp.3d 991, 994-95 (N.D. Ill. 2018) (same); *Howard v. Genentech, Inc.,* Civil Action No. 12–11153–DPW, 2013 WL 680200, at *3 (D. Mass. Feb. 21, 2013) ("[T]he plain language of section 1441(b) requires at least one defendant to have been served before removal can be effected."); *Hawkins v. Cottrell, Inc.,* 785 F.Supp.2d 1361, 1368–72 (N.D. Ga. 2011) (interpreting the "properly joined and served" provision in light of the definition of "served" and holding that Section 1441(b)'s text is "not ambiguous" and requires service before a defendant can remove the case).

diversity. Removal based on diversity jurisdiction is intended to protect out-of-state defendants from possible prejudices in state court. *See Tosco Corp. v. Cmtys. for a Better Env't.,* 236 F.3d 495, 502 (9th Cir. 2001) ("The purpose of diversity jurisdiction is to provide a federal forum for out-of-state litigants where they are free from prejudice in favor of a local litigant." (internal quotations marks omitted)). The need for such protection is absent; however, in cases where a defendant is a citizen of the state in which the case is brought. *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 940 (9th Cir. 2006). "Within this contextual framework, the forum defendant rule allows the plaintiff to regain some control over forum selection by requesting that the case be remanded to state court." *Id.*

In its original form, the rule created potential for abuse—a plaintiff could name an instate defendant to the suit without ever intending to serve or prosecute the case against them. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 541, 59 S.Ct. 347, 83 L.Ed. 334 (1939). To prevent this tactic, Congress added the "properly joined and served" language to the rule, "so that if a plaintiff named but never served an in-state defendant, the forum defendant rule would not preclude removal." *Bowman*, 423 F. Supp. 3d at 1291; *Sullivan v. Novartis Pharm. Corp.*, 575 F. Supp. 2d 640, 643-45 (D.N.J. 2008) (analyzing the legislative history of Section 1441 and compiling cases regarding the same). In this way, the purpose of the "properly joined and served" addition was to "prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom [the plaintiff] does not intend to proceed." *Goodwin v. Reynolds*, 757 F.3d 1216, 1221 (11th Cir. 2014) (quoting *Sullivan*, 575 F. Supp. at 645); *see also Stan Winston Creatures, Inc. v. Toys R Us, Inc.*, 314 F.Supp.2d 177, 181 (S.D.N.Y.2003).

Congress added the "joined and served" language in 1948. *Goodwin,* 757 F.3d at 1221. This change was well before the existence of online dockets, much less the technology to actively scour those dockets for newly filed lawsuits. As numerous federal courts have correctly concluded,

"[c]ongress could not possibly have anticipated the tremendous loophole that would one day manifest from technology enabling forum defendants to circumvent the forum defendant rule by . . . electronically monitoring state court dockets." *Perez v. Forest Labs., Inc.*, 902 F. Supp. 2d 1238, 1243 (E.D. Mo. 2012); *see also Little v. Wyndham Worldwide Operations, Inc.*, 251 F. Supp. 3d 1215, 1222 (M.D. Tenn. 2017) (noting snap removal "is something Congress certainly could not have envisioned when it enacted the present version of § 1441(b)(2) in 1943."); *Sullivan*, 575 F. Supp. 2d at 646 ("As a matter of common sense, . . .Congress did not add the 'properly joined and served' language in order to reward defendants for conducting and winning a race, which serves no conceivable public policy goal, to file a notice of removal before the plaintiffs can serve process.").

Aside from running contrary to the statute's language, congressional history, and statutory purpose, permitting "snap removal" also would produce absurd results. As one federal court observed:

> The result of blindly applying the plain "properly joined and served" language of § 1441(b) is to eviscerate the purpose of the forum defendant rule. It creates a procedural anomaly whereby defendants can always avoid the imposition of the forum defendant rule so long as they monitor the state docket and remove the action to federal court before they are served by the plaintiff. In other words, a literal interpretation of the provision creates an opportunity for gamesmanship by defendants.

*Fields v. Organon USA Inc.*, No. CIV.A. 07-2922(SRC), 2007 WL 4365312, at *5 (D.N.J. Dec. 12, 2007). Federal district courts around the country have echoed this same sentiment. *See, e.g.*, *Swindell–Filiaggi v. CSX Corp.*, 922 F.Supp.2d 514, 521 (E.D. Pa.2013) ("[R]ewarding a 'race to remove' is at odds with Congress's interest in limiting the right of removal."); *Perez*, 902 F. Supp. at 1245–46 ("It is unlikely that the plain wording of Section 1441(b)(2) broadly encompasses an electronic docket vigil that would enable forum defendants, or out-of-state defendants joined to

forum defendants, to exercise their own forum-shopping manipulation of jurisdiction."); *Sullivan*, 575 F.Supp.2d at 645–46 (stating that the defendant's "contention that removability should depend on the timing of service of process is absurd on its face"); *Burnett*, 2010 WL 11578884, at *3 (D. Nev. Feb. 10, 2010) ("The rule in § 1441(b) is about the potential for citizenship bias in state court, not the timing of service."); *Phillips Constr., LLC v. Daniels Law Firm, PLLC*, 93 F. Supp. 3d 544, 554-55 (S.D. W. Va. 2015) (analyzing federal cases anddetermining that allowing snap removal would produce "absurd and untenable results"); *Khashan v. Ghasemi*, No. CV10-00543-MMM(CWX), 2010 WL 1444884, at *2 (C.D. Cal. Apr. 5, 2010) (collecting cases and finding pre-service removal does not defeat the forum defendant rule); *Burnett v. Tufguy Productions, Inc.*, No. 2:08-CV-01335-RCJ-RJJ, 2010 WL 11578884, at *3 (D. Nev. Feb. 10, 2010) ("The rule in § 1441(b) is about the potential for citizenship bias in state court, not the timing of service."); *Phillips Constr., LLC v. Daniels Law Firm, PLLC*, 93 F. Supp. 3d 544, 554-55 (S.D.W. Va. 2015) (analyzing federal cases and determining that allowing snap removal would produce "absurd and untenable results").

### vi.    The Court Should Award Mr. Crawford His Fees and Costs.

The federal removal statute permits the award of costs and actual expenses incurred with a remand.  28 U.S.C. §§ 1447(c).  In its 2005 decision in *Martin v. Franklin Capital Corp.,* The United States Supreme Court discussed Congress' concerns in providing for such fee shifting.

> …Congress thought fee shifting appropriate in some cases. The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff. The appropriate test for awarding fees under §1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants

12

a right to remove as a general matter, when the statutory criteria are
satisfied.

*Martin v. Franklin Capital Corp.,* 546 U.S. 132, 104 (2005).  A party is not required to show bad faith to obtain attorney's fees and costs upon remand. *Gotro v. R & B Realty Grp*., 69F.3d 1485, 1487 (9th Cir. 1995). Rather, the court has wide discretion to award attorneys' fees and costs under this provision. *Id.*

This Court has previously declined to award fees on the basis that courts are in "disarray" on the snap removal issue. *See Deutsche Bank,* 2020 WL 7360680 at *3.[9]  Be that as it may, this Court's four prior orders should have made it clear how this Court intends to rule on this Motion, yet Top Rank  has still refused to voluntarily remand and it is fully aware of these decisions and the likely result of this Motion which should have caused it to voluntarily remand so as to avoid these very fees and costs that are now being sought from it.  To be clear, the majority of judges in the United States District Court, District of Nevada view snap removal as entirely improper and routinely remand removal sought in this fashion back to state court.  At some point, defendants— here Top Rank—have to be ordered to pay the needless and unnecessary expense associated with Snap Removal or they will continue to engage in these improper litigation tactics that do nothing but drive up unnecessary fees and costs and waste the judicial resources of this Court.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

13

## IV.   CONCLUSION

Top Rank's removal was procedurally improper because no defendant had been served and snap removal cannot defeat diversity jurisdiction at any rate.   As a result, this case should be remanded to state court based on the forum defendant rule.   Furthermore, as this case was improperly removed by Top Rank, Top Rank is responsible for Mr. Crawford's attorneys' fees incurred in obtaining the remand of this case back to state court.

DATED this 14th day of February, 2022.

*/s/ Hector J. Carbajal II*

CARBAJAL LAW
Hector J. Carbajal II, NV Bar No. 6247
10001 Park Run DR
Las Vegas, Nevada 89145
Telephone: (702) 846-0040
Facsimile: (702) 846-1329
E-mail: hector@claw.vegas


Bryan J. Freedman, CA SBN 151990
Brian E. Turnauer, CA SBN 214768
FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Phone: (310) 201-0005
Fax: (310) 201-0045
Email: bfreedman@ftllp.com
Email: bturnauer@ftllp.com

*Attorneys for Terence Crawford*

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that I am an employee of the CARBAJAL LAW and service of the foregoing document was made on the 14th day of February, 2022, via the Court's CM/ECF filing system addressed to all parties on the e-service list.

*/s/ Brittany Friedman*
An Employee of Carbajal Law