# EXHIBIT 1 – NOTICE OF REMOVAL

Electronically Filed
1/15/2022 5:48 PM
Steven D. Grierson
CLERK OF THE COURT

1   **NRE**
**O'MELVENY & MYERS LLP**
2   Daniel M. Petrocelli, CA Bar No. 97802*
dpetrocelli@omm.com
3   David Marroso, CA Bar No. 211655*
dmarroso@omm.com
4   Joseph Guzman, CA Bar No. 310493*
jguzman@omm.com
5   1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
6   Phone  310 553-6700
Fax     310 246-6779
7   *Pro hac vice application forthcoming

8   **HONE LAW**
Eric D. Hone, NV Bar No. 8499
9   ehone@hone.law
Jamie L. Zimmerman, NV Bar No. 11749
10  jzimmerman@hone.law
701 N. Green Valley Parkway, Suite 200
11  Henderson, NV 89074
Phone  702-608-3720
12  Fax     702-703-1063

13  *Attorneys for Defendant Top Rank, Inc.*

14                    EIGHTH JUDICIAL DISTRIC COURT

15                        CLARK COUNTY, NEVADA

16  TERENCE CRAWFORD, an individual,        Case No.  A-22-846568-B
                                            Dept. No. 13
17                      Plaintiff,

18         vs.                              **NOTICE REMOVAL PURSUANT TO
                                            28 U.S.C. §§ 1332(a), 1441(b), AND 1446**
19  TOP RANK, INC., a Nevada corporation; and
    Does 1 through 20, inclusive,
20
                        Defendants.
21

22         TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

23         PLEASE TAKE NOTICE that Defendant Top Rank, Inc., ("Top Rank" or "Defendant"),

24  by and through its undersigned counsel, filed a notice of removal pursuant to 28 U.S.C.

25  §§1332(a), 1441(b), and 1446 to the United States District Court, District of Nevada. A copy of

26  / / /

27  / / /

28  / / /

                                            1

1  this notice of removal is attached hereto.

2      Dated this 15th day of January 2022.

3

4  _____

5  O'MELVENY & MYERS LLP
   Daniel M. Petrocelli, CA Bar No. 97802*
   dpetrocelli@omm.com

6  David Marroso, CA Bar No. 211655*
   dmarroso@omm.com

7  Joseph Guzman, CA Bar No. 310493*
   jguzman@omm.com

8  1999 Avenue of the Stars, 8th Floor
   Los Angeles, CA 90067

9  Phone  310-553-6700
   Fax     310-246-6779

10  *Pro hac vice application forthcoming

11  HONE LAW
    Eric D. Hone, NV Bar No. 8499

12  ehone@hone.law
    Jamie L. Zimmerman, NV Bar No. 11749

13  jzimmerman@hone.law
    701 N. Green Valley Parkway, Suite 200

14  Henderson, NV 89074
    Phone  702-608-3720

15  Fax     702-703-1063

16  Attorneys for Defendant Top Rank, Inc.

17

18              CERTIFICATE OF SERVICE

19      The undersigned, an employee of Hone Law, hereby certifies that on the 15th day of

20  January, 2022, she caused a copy of the foregoing to be transmitted by electronic service in

21  accordance with Administrative Order 14.2, to all interested parties, through the Court's Odyssey

22  E-File & Serve system.

23

24  _____

25  Candice Ali, an employee of HONE LAW

26

27

28



2

**O'MELVENY & MYERS LLP**
Daniel M. Petrocelli, CA Bar No. 97802*
dpetrocelli@omm.com
David Marroso, CA Bar No. 211655*
dmarroso@omm.com
Joseph Guzman, CA Bar No. 310493*
jguzman@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Phone  310 553-6700
Fax      310 246-6779
*Pro hac vice application forthcoming

**HONE LAW**
Eric D. Hone, NV Bar No. 8499
ehone@hone.law
Jamie L. Zimmerman, NV Bar No. 11749
jzimmerman@hone.law
701 N. Green Valley Parkway, Suite 200
Henderson, NV 89074
Phone  702-608-3720
Fax      702-703-1063

*Attorneys for Defendant Top Rank, Inc.*

UNITED STATES DISTRIC COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TERENCE CRAWFORD, an individual, | Case No.  2:22-cv-00081 |
| Plaintiff, | |
| vs. | **DEFENDANT TOP RANK, INC.'S PETITION OF REMOVAL** |
| TOP RANK, INC., a Nevada corporation; and Does 1 through 20, inclusive, | |
| Defendants. | |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE**

**DISTRICT OF NEVADA:**

**PLEASE TAKE NOTICE** that Defendant Top Rank, Inc. ("Top Rank") hereby files this

Petition for Removal removing the instant action to the United States District Court for the

District of Nevada, from the Eighth Judicial District Court, Clark County, pursuant to 28 U.S.C.

§§ 1332, 1441, and 1446.

/ / /

1

1.      Plaintiff Terence Crawford ("Crawford") first filed this action on January 12, 2022 in the Eighth Judicial District Court, Clark County, Nevada, where it was assigned Case No. A-22-846568-B.  Plaintiff named as defendants Top Rank and Does 1 through 20, inclusive ("Defendants").  A true and correct copy of the Complaint is attached hereto as **Exhibit A.**

2.      This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1332(a) because: (i) this action is a civil action pending within the jurisdiction and territory of the United States District Court for the District of Nevada; (ii) the action is between citizens of different states; (iii) the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs; and (iv) all procedural requirements for removal are met.

**I.      There is Complete Diversity of Citizenship Between and Among the Parties.**

3.      Crawford is a resident of the State of Nebraska.  *See* Ex. A ¶ 9.  Top Rank is a Nevada corporation with a principal place of business in Las Vegas, Nevada.  *Id.* ¶ 10.  Thus, it is a citizen of Nevada for diversity purposes.

**II.      The Amount in Controversy Exceeds $75,000.**

4.      Crawford seeks both monetary and nonmonetary relief, along with punitive damages.  Crawford asserts six causes of action: two actions for breach of contract; an action for fraudulent misrepresentation; an action for negligent misrepresentation; an action for breach of the implied covenant of good faith and fair dealing; and an action for tortious breach of the implied covenant.  Crawford seeks "no less than $4,500,000" for his first breach of contract claim, *see* ¶ 42, and "an amount in excess of $900,000" for his section breach of contract action, *see* ¶ 75.  These amounts well exceed the $75,000 amount in controversy requirement set by 28 U.S.C. § 1332.

**III.      All Procedural Requirements for Removal Have Been Met.**

5.      Top Rank timely filed this Petition for Removal.  Crawford filed this action on January 12, 2022.  Thus, this removal falls within the thirty-day period prescribed by 28 U.S.C. § 1446(b)(1), and is filed less than one year after the action was initiated, as required by 28 U.S.C. § 1446(c)(1).

/ / /

6.     As of the filing of this Petition, Top Rank has not been served with a copy of the Complaint or a summons.  *See* **Exhibit B**, Declaration of Top Rank Inc's General Counsel Jeremy Koegel in Support of Petition for Removal, at ¶¶ 3-5.  Upon information and belief, Does 1 through 20 have not been served with a copy of the Complaint or a summons.  Thus, consent from Does 1 through 20 is not required.  *See* 28 U.S.C. § 1446(b).

7.     Top Rank may remove the action pursuant to 28 U.S.C. § 1441(a) (permitting removal "by the defendant or the defendants, to the district of the United States for the district court and division embracing the place where such action is pending.").  Because Top Rank has not been served, removal is proper.  *See U.S. Bank, N.A. as Tr. to Wachovia Bank Nat'l Ass'n v. Fidelity Nat'l Title Grp., Inc.*, 2021 WL 5566538, at *4 (D. Nev. Nov. 29, 2021); *MetLife Home Loans, LLC v. Fidelity Nat'l Title Grp, Inc.*, 2021 WL 4096540, at *4 (D. Nev. Sept. 8, 2021); *see also Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019)*; Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 153 (3d Cir. 2018)*; Texas Brine Co., L.L.C. v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020)*; McCall v. Scott*, 239 F.3d 808, 813, n.2 (6th Cir. 2001).

8.     Removal at the present time will not result in any prejudice to Plaintiff as the matter is in the initial pleading stage, and no discovery has occurred.

9.     Nothing in this Petition for Removal shall be interpreted as a waiver or relinquishment of Top Rank's rights to assert any defense or affirmative matter, whether pursuant to Fed. R. Civ. P. 8(c), Fed. R. Civ. P. 12(b), or otherwise, including, but not limited to, the defenses for failure to state a claim upon which relief can be granted or insufficient service of process.  Top Rank intends no admission of fact, law, or liability by this Petition, and expressly reserves all defenses, motions, and/or pleas.

10.     Top Rank reserves the right to supplement its Petition for Removal by adding any jurisdictional defenses which may independently support a basis for removal.

11.     A copy of this Petition for Removal is being filed with the Clerk of the District Court of Clark County, Nevada, as required under 28 U.S.C. § 1446(d).  Top Rank is also giving prompt written notice to Plaintiff of the filing of this Petition for Removal.

## <u>CONCLUSION</u>

Top Rank respectfully requests that this Court take jurisdiction of this action and issue all necessary orders and process to remove this action from the District Court of Clark County, Nevada to the United States District Court for the District of Nevada.

DATED this 15th day of January 2022.

_____

O'MELVENY & MYERS LLP
Daniel M. Petrocelli, CA Bar No. 97802*
dpetrocelli@omm.com
David Marroso, CA Bar No. 211655*
dmarroso@omm.com
Joseph Guzman, CA Bar No. 310493*
jguzman@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Phone  310-553-6700
Fax      310-246-6779
*Pro hac vice application forthcoming

HONE LAW
Eric D. Hone, NV Bar No. 8499
ehone@hone.law
Jamie L. Zimmerman, NV Bar No. 11749
jzimmerman@hone.law
701 N. Green Valley Parkway, Suite 200
Henderson, NV 89074
Phone  702-608-3720
Fax      702-703-1063

Attorneys for Defendant Top Rank, Inc.



**CERTIFICATE OF SERVICE**

The undersigned, an employee of Hone Law, hereby certifies that service of the foregoing document was made on the 15th day of January 2022 via the Court's CM/ECF filing system addressed to all parties on the e-service list.

_____

Candice Ali, an employee of HONE LAW



# EXHIBIT A

EDJC Case No. A-22-846568-B
Complaint

Electronically Filed
1/12/2022 7:07 AM
Steven D. Grierson
CLERK OF THE COURT

1   **COMP**
Bryan J. Freedman, Esq. (CAL. SBN 151990)*
2   Brian E. Turnauer, Esq. (CAL. SBN 214768)*
FREEDMAN + TAITELMAN, LLP
3   1801 Century Park West, 5th Floor
Los Angeles, CA 90067
4   Telephone: (310) 201-0005
Facsimile: (310) 201-0045
5   E-mail: BFreedman@ftllp.com
             BTurnauer@ftllp.com
6   ***Counsel reasonably expect to be authorized to practice**
**pursuant to SCR 42 and are appearing now**
7   **consistent with RPC 5.5(b)(1) and 5.5(c).**
8
9   *HECTOR J. CARBAJAL II*
*Nevada Bar No. 6247*
10  *CARBAJAL LAW*
*10001 Park Run Drive*
11  *Las Vegas, Nevada 89145*
*Telephone: (702) 846-0040*
12  *Facsimile: (702) 846-1329*
*E-mail: hector@claw.vegas*
13
14  *Attorneys for Plaintiff Terence Crawford*

15                  **EIGHTH JUDICIAL DISTRICT COURT**

16                      **CLARK COUNT, NEVADA**

17  TERENCE CRAWFORD, an individual.     )   Case No.:
                                         )   Dept. No.:
18              Plaintiff,               )
                                         )
19                                       )   **COMPLAINT FOR:**
    TOP RANK, INC., a Nevada corporation; and )
20  Does 1 through 20, inclusive,        )   **1. BREACH OF CONTRACT**
                                         )
21              Defendants.              )   **2. BREACH OF CONTRACT**
                                         )
22                                       )   **3. FRAUDULENT MISREPRESENTATION**
                                         )
23                                       )   **4. NEGLIGENT MISREPRESENTATION**
                                         )
24                                       )   **5. BREACH OF THE IMPLIED COVENANT**
                                         )      **OF GOOD FAITH AND FAIR DEALING**
25                                       )
                                         )   **6. TORTIOUS BREACH OF THE IMPLIED**
26                                       )      **COVENANT OF GOOD FAITH AND**
                                         )      **FAIR DEALING**
27  _____ )
                                             **Business Court Designation Pursuant to**
28                                           **EDCR 1.61**

                              CASE NO: A-22-846568-B
                                      Department 13

                                1
                            COMPLAINT

Plaintiff Terence Crawford ("<u>Crawford</u>" or "<u>Plaintiff</u>"), by and through his undersigned counsel of record, hereby brings the following causes of action against defendant Top Rank, Inc. ("<u>Top Rank</u>"), and Does 1 through 20, inclusive, and with knowledge as to himself and otherwise on information and belief, claims and alleges as follows:

## I.

## **INTRODUCTION**

1.      For years, professional boxers and others in the sports world have called out Top Rank's owner Bob Arum ("<u>Arum</u>") for his disparate treatment of Black boxers, including those very same Black boxers that Top Rank is contractually obligated to promote.  Because this is boxing, a sport with a checkered history, and because Arum is now dismissed as just a grumpy old white man, Arum continues to make racist and bigoted statements and purposefully damage the reputations of Black boxers without any consequences. This is generally because the affected boxers, who are in long-term contracts with Top Rank, fear that if they speak up, they will be placed on the sideline and not given the opportunity to fight during the life of their deal, which could be 5 to 7 years.  Less than two weeks before this complaint was filed, Top Rank, through Arum, called World Boxing Council ("<u>WBC</u>") Interim Heavyweight Champion Dillian Whyte, a Black man, "greedy" for requesting what he believes to be a fair dollar amount to fight WBC Lineal Heavyweight Champion and Ring Magazine Heavyweight Champion Tyson Fury, a White man. Meanwhile, Top Rank's president Todd DuBoeuf ("<u>DuBoeuf</u>"), who is fully aware of Arum's racist statements and disparate treatment of Black boxers, keeps his mouth shut waiting to take the helm of Top Rank after Arum dies or retires.  Since Top Rank and DuBoeuf will not police themselves, do the right thing and move forward as a responsible business in 2022, Crawford, who backs down to no one, will make them do so.  By this lawsuit, Crawford shines a spotlight on the systemic racism that runs through Top Rank, Top Rank's complete inability to properly promote Black fighters,  and Top Rank, Arum and DuBoeuf's disparate treatment of Black fighters, including Crawford.

2.      Crawford is the preeminent welterweight professional boxer of his generation with a professional record of 38 wins (29 by way of knock-out), 0 losses and 0 draws.  He has held multiple world championships in three weight classes, including the World Boxing Organization ("<u>WBO</u>") welterweight title since 2018.  Previously, Crawford held the WBO and Ring magazine lightweight titles

from 2014 to 2015; and the unified World Boxing Association ("WBA") (Super), WBC, International Boxing Federation ("IBF"), WBO and Ring light welterweight titles between 2015 and 2017. Crawford became the first male boxer to simultaneously hold all four major world titles in boxing (WBA, WBC, IBF and WBO) since Jermain Taylor in 2005, and is one of only six male boxers in history to do so. As of January 2022 when this Complaint was filed, Crawford is ranked as the world's second-best active boxer, pound for pound, by ESPN, third by Boxing Writers Association of America, and fourth by the Transnational Boxing Rankings Board ("TBRB"), BoxRec and The Ring magazine. He is also ranked as the world's best active welterweight by ESPN, BoxRec, and The Ring, and second by the TBRB. Crawford was named Fighter of the Year by the Boxing Writers Association of America in 2014, and by ESPN in 2014 and 2017. Crawford is also a proud Black athlete.

3.   Top Rank is a boxing promotion company founded and lead by Arum, who has been called out as a racist by numerous individuals in sports and entertainment industry even as he has made millions of dollars exploiting individuals of color, including Crawford. It is painfully clear that Top Rank, and especially Arum, judges people based on their race. Arum's sordid history with athletes of color, especially Black fighters, and his bias favoring white and Latino fighters is well-documented and known throughout the boxing world.

4.   Arum makes no secret of his deep-seated bias against Black fighters. For example, he called legendary Black boxer Floyd Mayweather "soft" and claimed that he "shoots up cars"— reinforcing an invidious racist stereotype with no basis in fact. He consistently mocks rival boxing promoter Al Haymon – who is a Black man – and his relationship with Black fighters, saying Haymon would steer a Black fighter away from fighting Crawford out of a sense of "brotherhood." Arum even famously profited from staging fights in South Africa during the height of apartheid, dismissing the brutal and bloody regime as mere "politics" and saying he did not care about it as long as he could make money.

5.   Most egregiously, Top Rank Arum and DuBoeuf have allowed Arum's bias against Black fighters to taint their treatment of Crawford, particularly once it became clear, in Arum's mind, that Crawford would not be re-signing with Top Rank at the end of his promotional rights agreement. Even during the life of the Crawford-Top Rank promotional rights agreement, when Top Rank had a

1    contractual obligation to promote Crawford, Arum launched a smear campaign against Crawford to

2    paint him as an unexciting, unprofitable fighter who could not draw viewers. In truth, Top Rank, a

3    company with zero Black executives, and only two or three Black employees, refuses to admit that it

4    simply does not care about, support, or know how to promote Black fighters. Recently, while most

5    businesses have become sensitive to issues of race and social justice, Top Rank has not. At a time when

6    most businesses took steps to honor Black lives in the wake of the George Floyd murder, Top Rank

7    actually refused to place the Black Lives Matter logo on the mats of its boxing rings. Instead of standing

8    behind a Black fighter such as Crawford, it publicly criticized him.

9        6.    Tellingly, while Arum openly claims that Top Rank has lost money on Crawford's fights,

10   he fails to disclose that when Top Rank needed a marquee fight to launch its ESPN+ contract, it turned

11   to Crawford, its biggest star, to fight Jeff Horn on the new platform.  Crawford's successful bout against

12   Horn on ESPN+ was a ratings bonanza and has resulted in million and millions of dollars to Top Rank.

13   Top Rank's current smear campaign is deliberately aimed at punishing Crawford for possibly leaving

14   Top Rank by making it harder for him to sign with a new boxing promoter. Tellingly, Arum has not

15   subjected any of his white fighters to this kind of vicious, vengeful treatment. Clearly, Arum feels he is

16   entitled to profit indefinitely off Crawford and other Black fighters, and he will retaliate whenever they

17   dare to assert their independence.

18       7.    In this action, Crawford seeks to right the wrongs inflicted on him by Top Rank. Top

19   Rank has repeatedly breached its contracts with Crawford, and in fact defrauded him into entering

20   agreements in the first place. Even while Top Rank openly criticized Crawford, it pushed him into

21   agreeing to fight Egidijus Kavaliauskas – not because that was best for Crawford's career, but because

22   Top Rank needed to fulfill its obligations to ESPN. To induce Crawford to agree to the Kavaliauskas

23   bout, Top Rank fraudulently promised to arrange for Crawford to fight Errol Spence Jr. despite knowing

24   that Top Rank could never deliver the promised match. Top Rank also failed to deliver a promised

25   second bout under the parties' promotional rights agreement. Top Rank apparently had no qualms about

26   lying to a Black fighter or failing to respect its contractual obligations to him, though it would never

27   treat one of its white fighters with such blatant disrespect.

28

8.     Once Top Rank fraudulently induced Crawford to sign their agreements, Top Rank—through Arum, its CEO—launched a calculated campaign to defame Crawford, preventing him from receiving the benefit of his bargain.  Meanwhile,  Top Rank's president DuBoeuf just sits back with a smile and watches from the sidelines as he counts the days until he can finally become "the man" and the power behind Top Rank. Crawford now calls upon Top Rank to account for the harms it has inflicted on him, and will seek full redress of his damages.

## II.

## JURISDICTIONAL ALLEGATIONS

9.     Crawford is an individual who, at all relevant times, has resided in, and is a resident of, the State of Nebraska.

10.     Crawford alleges on information and belief that Top Rank is a corporation organized and existing under the laws of the State of Nevada, which is licensed to do business and does substantial business in the State of Nevada.  Its principal place of business is Las Vegas, Clark County, Nevada. Top Rank is in the business of arranging, presenting and promoting professional boxing bouts, including bouts for Crawford.

11.     Crawford is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 20, inclusive, and thereon sues these defendants by such fictitious names.  Crawford alleges on information and belief that such DOE defendants are liable to Crawford for the actions hereinafter set forth.  Crawford will amend this complaint to allege the true names and capacities of such DOE defendants when ascertained.

12.     Crawford alleges on information and belief that, at all times relevant hereto, each defendant, including DOE defendants, was the agent, servant, employee and/or representative of each of the other defendants and, in doing the things herein alleged, was acting within the course and scope of, and pursuant to, said agency, services, employment and/or representation.

13.     This Court has jurisdiction over this matter pursuant to Nev. Const. art. VI, § 6, as this Court has original jurisdiction in all cases not assigned to the justices' courts.

14.     This Court has subject matter jurisdiction over this matter pursuant to NRS § 4.370(1), as the matter in controversy exceeds $15,000, exclusive of attorney fees, interest, and costs.

COMPLAINT

15. Venue is proper under Nev. Rev. Stat. 13.010(1) because Top Rank resides in Clark County, Nevada.

16. Moreover, personal jurisdiction and venue are proper in this Court due to Nevada choice-of-law and forum-selection provisions in the parties' agreements at issue in this litigation.

**III.**

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

A.     **Terence "Bud" Crawford.**

17. Crawford, born September 28, 1987 in Omaha, NE, is the most prominent welterweight professional boxer of his generation with a professional record of 38 wins (29 by way of knock out), 0 losses and 0 draws and multiple world championships in three weight classes. He is also a proud Black athlete.

B.     **Top Rank's Disparate Treatment of Black Boxers and Arum's Racist  Remarks.**

18. Top Rank is a boxing promotion company. Bob Arum, the founder and CEO of Top Rank, has been called out as a racist by numerous individuals in the sports and entertainment industry as he has made millions of dollars exploiting individuals of color, especially Black boxers such Crawford. It is painfully clear that Top Rank, and especially Arum, judges people based on their race. Arum's sordid history with athletes of color, especially Black boxers, and his bias favoring white and Latino fighters are well-documented and known throughout the boxing world.

19. Dating back to the late 1970s and early 1980s, Arum had repeated collaborations with South Africa's Nationalist Party government. Arum worked closely with South African businessman Sol Kerzner to stage numerous fights in South Africa during apartheid. Arum made a fortune in South Africa as Africans there were being slaughtered in the streets.  Arum visited Johannesburg in 1982—not his first trip—during the high tide of apartheid and in violation of the boycott propounded by the African majority.

20. Of his time in South Africa, Arum arrogantly stated, *"I made more money from the concessions on one fight in 1979* [in South Africa] *than I do from a whole promotion in the U.S."*

21. Arum and Kerzner also arranged for fights in the homeland of Bophuthatswana, which had been made into an "independent" Black state as part of the South African government's apartheid

policy. Arum was asked whether staging the fights in Bophuthatswana lent that state, and implicitly, the internationally condemned apartheid policy, credibility. Arum responded, *"I couldn't care less whether Bophuthatswana is an independent nation or not. If the fight is bad, people won't tune in, and if it's good, they will. [I prefer to] let the United Nations fool around and determine whether **these people** [in Bophuthatswana] are puppets or not. As long as I can do business and put on a fight, politics, frankly, bores me"* (emphases added).

22.     Arum's racist attitudes are well-known in the boxing world. Robert Lee, the former president of the IBF, once said of Arum, *"He once told me, 'We will let the Blacks and the Latinos fight in the ring and we will count the money on the outside.'"* Boxing world champion Julio Cesar Chavez called Arum "a liar and a racist." Boxing world champion Floyd Mayweather said Arum is "biased against Black fighters," and that Arum favors Latino fighters over Black fighters because of their drawing power: "He tried to install in our minds that Blacks can't sell [pay-per-view] or sell out arenas."

23.     Arum frequently plays the race card when it is to his advantage, and always in support of white fighters. Arum responded to Mayweather's comments about Arum's racism by saying, *"Boxing is the least racist sport we have."* Yet Arum later commented that his white fighter Kelly Pavlik could not get a fight on HBO or Showtime because Pavlik is "white." Arum stated that there is a perception that *"if you are a white guy, you can't fight,"* and added*, "[I]t is much tougher for a white guy to break through than if Kelly was a different race."* Ross Greenberg, president of HBO Sports, disputed Arum's comments and stated, *"It is a disgraceful and undignified remark by a disturbed man."*

24.     Arum himself openly makes bigoted comments in the press. Commenting on what he expected Black promoter Al Haymon would say about having his Black fighter Errol Spence Jr. fight Crawford, Arum stated, *"He's* [Haymon] *gonna say, 'Spence, listen to me. Don't listen to the white guys, because if you listen to the white guys they're gonna steer you down the road. Listen to me, brother. We're part of a brotherhood. And if I tell you not to fight Crawford, I'm telling you not to fight Crawford.' That's exactly what he will say."*

25.     Arum commented that mixed martial artists are *"guys rolling around like homosexuals"* and the fans are *"a bunch of skinhead white guys."*

26.     World champion mixed martial artist and television host Bas Rutten called Arum a

"racist."

27.    Arum called Black world boxing champion Larry Holmes a *"soft fighter"* who was focused on money.

28.    Arum commented that Mayweather (50 wins, 27 by knockout, and 0 losses) *"shoots up cars," "is not an entertaining fighter,"* and is a *"defensive"* and *"scared"* fighter.

29.    Arum clearly allows his revolting racial bias to impact the fighters he is obliged to promote. Recently, Top Rank boxer and two-weight-class world champion Shakur Stevenson – who is a Black man – noted that Arum does not promote or support Black fighters as well as he does other races.  Instead, Arum often blames the Black boxer by claiming the boxer cannot sell tickets.

30.    While most businesses have become sensitive to issues of race and social justice, Top Rank has not. Shockingly, at a time when most businesses took steps to honor Black lives in the wake of the George Floyd murder, Top Rank actually refused to place the Black Lives Matter symbol on the mats of its boxing rings.

31.    Less than two weeks before this complaint was filed, Top Rank, through Arum, called WBC Interim Heavyweight Champion Dillian Whyte, a Black man, *"greedy"* for requesting what he believes to be a fair  dollar amount to fight WBC Lineal Heavyweight Champion and Ring Magazine Heavyweight Champion Tyson Fury, a White man. Top Rank and Arum are reportedly openly considering promoting a match between Fury and either Any Ruiz, an American boxer of Mexican heritage or Finish boxer Robert Helenius.  The WBC rules allow for a 55/45 split between its world champion and interim titlist with the ability to adjust to as high as 70/30 under the sanctioning body's own review.  On information and belief, Arum requested an 80/20 split in favor of Fury. Whyte has objected to the split and Arum called him "greedy." On information and belief, Arum is openly considering promoting a match between Fury and either Any Ruiz, an American boxer of Mexican heritage or Finish boxer Robert Helenius instead of a bout with Whyte.

32.    Arum has made millions off the backs of boxers of color, including Black boxers. His racist attitudes pervade every aspect of his dealings with Black boxers like Crawford.  DuBoeuf, Arum's son-in-law, is Top Rank's president.  He has sat back and let Arum do his thing and make racist statements like it's the US of the 1950s.  He is as much to blame as Arum, if not more so.

### C.     The 2018 Exclusive Promotional Rights Agreement.

33.     Crawford signed his original promotional rights agreement with Top Rank on or about 2011. On or about August 22, 2018, with approximately two years left on the prior promotional rights agreement entered into between Crawford and Top Rank, the parties entered into an "Exclusive Promotional Rights Agreement" (the "2018 Agreement") whereby Top Rank continued to have the exclusive right to promote Crawford's services as a professional boxer. Crawford will provide this Court with a copy of the 2018 Agreement upon Top Rank's approval.

34.     The initial term of the 2018 Agreement was to commence on the date of the first bout after the signing of the 2018 Agreement and continue for a period of three (3) years following such bout (but, in no event, later than October 13, 2018), unless terminated sooner or extended further pursuant to various provision of the 2018 Agreement.

35.     Crawford's first bout under the 2018 Agreement was an October 13, 2018 twelfth-round knockout win over Jose Benavidez Jr., where Crawford retained his WBO welterweight title and improved his professional record to 34 wins and 0 losses. With this fight, the 2018 Agreement's termination date was set at October 12, 2021.

36.     During the term of the 2018 Agreement, Top Rank was contractually required to offer Crawford the right to participate in two (2) bouts per year.

37.     Crawford's compensation under the 2018 Agreement was based on the platform that each fight was televised: ESPN (or another linear television channel), ESPN+ or Pay-Per-View.

### D.     Top Rank Breaches the 2018 Exclusive Promotional Rights Agreement.

38.     Pursuant to the 2018 Agreement, Top Rank was obliged to offer Crawford two fights per year for each of the years between October 13, 2018 and October 12, 2019; October 13, 2019 and October 12, 2020; and October 13, 2020 and October 12, 2021.

39.     During the first year of the 2018 Agreement, Top Rank offered Crawford two fights between October 13, 2018 and October 12, 2019: fights with Jose Benavidez Jr. (October 13, 2018) and Amir Khan (April 20, 2019). Crawford was paid 3.5 million for the Benavidez Jr. bout (plus $45,000 in training expenses) and $4,800,000 (plus $50,000 in training expenses) for the Amir Khan bout.

40.     During the second year of the 2018 Agreement, Top Rank offered Crawford only one

1    fight between October 13, 2019 and October 12, 2020, which was the bout with Edigijus Kavaliauskas

2    (December 14, 2019). Crawford was paid $4,000,000 (plus an additional $50,000 for training expenses).

3    Thus, Top Rank <u>breached</u> the 2018 Agreement by failing to offer Crawford a second fight in year two

4    of the 2018 Agreement.

5        41.      During the third year of the 2018 Agreement, Top Rank offered Crawford two fights

6    between October 13, 2020 and October 12, 2021: Kell Brook (November 11, 2020) and Shawn Porter

7    (bout agreement signed on or about September 2021 with the bout held on November 20, 2021).

8    Crawford was paid $3,500,000 for the Brook bout, and $6,000,000 for the Porter bout. Top Rank also

9    paid Crawford $50,000 in training expenses for each of these two bouts.

10       42.      At all times during the 2018 Agreement, Crawford was healthy and ready, willing and

11    able to compete in professional boxing matches. His average compensation under the 2018 Agreement

12    was approximately $4,500,000 per bout. Thus, Top Rank owes Crawford no less than $4,500,000 for its

13    breach of the 2018 Agreement by failing to provide Crawford with a second fight during the second year

14    of the 2018 Agreement.

15       **E.**      <u>**Top Rank Fraudulently Entered Into, and Breached, the 2019 Kavaliauskas**</u>

16            <u>**Championship Bout Agreement.**</u>

17       43.      On October 11, 2019, Top Rank and Crawford entered into a "Championship Bout

18    Agreement" for a twelve-round bout for Crawford to defend his WBO Welterweight Championship belt

19    against Egidijus Kavaliauskas ("<u>2019 Kavaliauskas Bout Agreement</u>"). Both Arum and DuBoeuf

20    negotiated the 2019 Kavaliauskas Bout Agreement with Crawford on Top Rank's behalf. During the

21    negotiations in or about October 2019, Crawford and his negotiating team informed Arum and DuBoeuf

22    that he would not take the fight for the $4 million being offered to him. Arum and DuBoeuf informed

23    Crawford that he should take the offer because a fight with Errol Spence Jr. ("Spence") was right around

24    the corner and that Top Rank could quickly make a Spence-Crawford fight happen. In fact, Arum and

25    DeBoeuf said Top Rank would include a "Spence bonus" in the 2019 Kavaliauskas Bout Agreement in

26    excess of nine hundred thousand dollars ($900,000) (the "<u>Arum and DuBoeuf Spence Representations</u>")

27    because they were confident they could make a fight with Crawford and Spence before the end of 2020.

28    This made the Kavaliauskas fight worth it for Crawford. Based on the Arum and DuBoeuf Spence

10

Representations, Crawford agreed to fight Kavaliauskas under the money terms offered to him. 2019 Kavaliauskas Bout Agreement contained a bonus provision that entitled Crawford to a bonus in excess of $900,000 which Top Rank was required to pay Crawford on or before December 31, 2020 if Errol Spence Jr. was physically able to compete in professional boxing and Top Rank was unable to offer Crawford a fight with Spence on or before December 31, 2020 (the "Spence Bonus Provision"). Crawford will provide this Court with a copy of the 2019 Kavaliauskas Bout Agreement upon Top Rank's approval.

44.     Top Rank failed to offer the Errol Spence Jr. fight to Crawford on or before December 31, 2020 even though Spencer was physically able to compete in professional boxing at  the time. Moreover, Top Rank did not pay the bonus in excess of $900,000 to Crawford under the Spence Bonus Provision as set forth in the 2019 Kavaliauskas Bout Agreement in breach of said agreement.

45.     Upon information and belief, at the time Top Rank entered into the 2019 Kavaliauskas Bout Agreement, Top Rank knew there would not be a Crawford-Spence fight pursuant to the terms of the Spence Bonus Provision set forth in the 2019 Kavaliauskas Bout Agreement. Top Rank needed Crawford to sign the 2019 Kavaliauskas Bout Agreement in order to honor its obligations to ESPN and fraudulently entered into the 2019 Kavaliauskas Bout Agreement with the Spence Bonus Provision despite never intending to perform that promise in order to fraudulently induce Crawford into entering into the 2019 Kavaliauskas Bout Agreement.

**F.      Arum and Top Rank Publicly Criticize Crawford to Intentionally Harm His Reputation and Interfere with His Ability to Sign Contracts with Future Promoters.**

46.     In addition to his inexcusable and blatant racism, Arum has a history of criticizing Black Top Rank fighters who he does not believe will re-sign with Top Rank.  His treatment of Crawford is a particularly glaring example of this pattern.  Although Crawford never stated that he would not resign with Top Rank, Arum figured that his unfair treatment of Crawford would likely keep him from re-signing with Top Rank.  Arum made it his mission to defame Crawford and harm his chances of signing lucrative contracts with other boxing promoters in the future.

47.     Arum has made the following comments about Crawford while simultaneously promoting Crawford under the 2018 Agreement:

- *"I won't lose any more money on Terence Crawford."*
- *"If he doesn't, then who the fuck needs him? He may be the greatest fighter in the world, but, hey, I ain't going bankrupt promoting him."*
- *"The question is, 'Do we want to keep him?' I could build a house in Beverly Hills on the money I've lost on him in the last three fights. A beautiful home."*
- *"Again, if we did this fight with Spence and put our money in for half of the first, and Crawford wins and Haymon wants to sign him . . . be my guest, for Christ's sake! In other words, I am not going to go in my pocket anymore for Terence Crawford."*
- *"Crawford's never done anything on PPV* [pay-per-view].*"*

("Arum's Statements About Crawford").

48.     While Arum loves to criticize Crawford and claim Top Rank has lost money on Crawford fights, Top Rank chose Crawford's welterweight debut against Jeff Horn to be the first major fight broadcast under Top Rank's lucrative deal with ESPN to promote bouts on ESPN's new streaming platform ESPN+.  The bout was a ratings bonanza, launched ESPN+ and resulted in millions of dollars to Top Rank. Yet Arum has the audacity to claim he could *"build a house in Beverly Hills on the money I've lost on him in the last three fights."*  On information and belief, Top Rank has lost millions promoting its most popular and well-known white fighters, yet Arum has not openly criticized them.

49.     The boxing world has taken notice of Arum's Statements About Crawford. Floyd Mayweather stated that Arum "treats him [Crawford] like he's property or something like that." Mayweather further stated, "I feel like he don't really respect Terence," and "He's just basically trying to get anything, any type of money he can get out of him, he's gonna get out of him."

50.     Dana White, head of UFC, stated regarding Arum: "Pay your fucking fighter what you owe him, that's your job."; "Arum is a piece of fucking shit."; and "I fucking hate that guy." White also commented that it is Arum's job to figure out how to promote a fighter as talented as Crawford without criticizing him.

51.     On information and belief, Arum's Statements About Crawford were intended to and does make it more difficult for Crawford to sign with another boxing promoter.

52.     Arum's statements regarding Crawford's performance under the 2018 Agreement and

various bout agreements with Top Rank and his ability to draw large pay-per-view numbers and promote his fights were made only once Arum convinced himself that, based on his treatment of Crawford, Crawford would not enter into a new deal with Top Rank.

53. By making statements that Crawford was not a profitable boxer and was therefore unlikely to draw significant viewership, Arum (and by extension, Top Rank) indicated to potential television programmers that scheduling and airing a bout featuring Crawford would not be profitable. These comments were made in a direct attempt to curtail Crawford's efforts to sign a lucrative deal with other boxing promoters besides Top Rank.

54. Top Rank has essentially attempted to "scare off" opportunities for Crawford to fight in televised bouts, thus interfering with Crawford's right to receive the benefits of his contract with Top Rank and for his future boxing career.

55. Top Rank's fraudulent misrepresentations, negligent, bad faith and tortious actions also created legal fees and costs Crawford has been compelled to pay to pursue this action. All these added fees and costs have and will continue to cause serious economic damages to Crawford. Again, the attorney's fees and costs are special damages that have been unnecessarily incurred as a result of Top Rank's actions and failures and are special damages consistent with NRCP 9(g) and the Supreme Court of Nevada's holding in *Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n.*, 117 Nev. 948, 35 P.3d 634 (2001).

## **FIRST CAUSE OF ACTION**

## **BREACH OF CONTRACT (PROMOTIONAL RIGHTS AGREEMENT)**

(By Crawford against Top Rank and DOES 1 through 20)

56. Crawford incorporates by reference each and every allegation set forth in Paragraphs 1 through 55 as if set forth in full herein.

57. The 2018 Agreement constitutes a legally binding contract between Mr. Crawford and Top Rank: There was an offer and acceptance by both parties, a meeting of the minds between the Parties as to the terms of the 2018 Agreement, and consideration provided by both Parties. The 2018 Agreement contains specific terms that determine the obligations of both Parties. The Parties manifested mutual assent to the written terms of the 2018 Agreement.

58. Pursuant to the 2018 Agreement, Top Rank was obliged to offer Crawford two fights per year for each of the years between October 13, 2018 and October 12, 2019; October 13, 2019 and October 12, 2020; and October 13, 2020 and October 12, 2021.

59. During the relevant time period Crawford was physically able to compete in professional boxing.

60. As set forth herein, Top Rank breached its contractual duties when it failed to offer Crawford the right to participate in at least two bouts in the year between October 13, 2019 and October 12, 2020.

61. All necessary conditions for Top Rank's performance under the 2018 Agreement were satisfied and Top Rank's failure to perform was unjustified and unexcused.

62. Crawford has performed all conditions, covenants, and promises required on his part to be performed in accordance with the terms and conditions of the 2018 Agreement, except for those obligations that were waived by Top Rank or which Crawford was excused or prevented from performing.

63. As a direct and proximate result of Top Rank's conduct, including its breach of the 2018 Agreement, Crawford has suffered and will continue to suffer damages in an amount to be proven at trial but in no event less than this Court's jurisdictional minimum.

64. Crawford has been required to retain the services of an attorney in order to prosecute this claim. Crawford is entitled to recover his reasonable attorney's fees and costs of suit.

65. Crawford has and will continue to incur significant and ongoing attorney's fees and costs in this action as a result of Top Rank's actions and failures in an amount in excess of fifteen thousand dollars ($15,000.00). These attorney's fees and costs are special damages consistent with the Supreme Court of Nevada's holding in *Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n.*, 117 Nev. 948, 35 P.3d 634 (2001). Crawford has been required to engage the services of an attorney to prosecute this action. The attorney's fees subject to this action are foreseeable damages arising from Top Rank's failures, fraudulent misrepresentation, negligence, breach of contract, bad faith, breach of the implied covenant of good faith and fair dealing, and tortious breach of the implied covenant of good faith and fair dealing. These attorney's fees and costs are the natural result and proximate consequence of Top

14

COMPLAINT

Rank's injurious conduct and failures. These proximate and foreseeable special damages are hereby specifically plead as special damages in accordance with NRCP 9(g).

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT (2019 KAVALIAUSKAS BOUT AGREEMENT)

(By Crawford against Top Rank and DOES 1 through 20)

66. Crawford incorporates by reference each and every allegation set forth in Paragraphs 1 through 55 as if set forth in full herein.

67. As set for more fully herein, Crawford and Top Rank were both parties to the 2019 Kavaliauskas Bout Agreement.

68. Under the Spence Bonus Provision in the 2019 Kavaliauskas Bout Agreement, among other things, Top Rank promised to pay Crawford a bonus in excess of $900,000 on or before December 31, 2020 if Spence was physically able to compete in professional boxing and Top Rank was unable to offer Crawford the opportunity to fight Spence prior to December 31, 2020.

69. The 2019 Kavaliauskas Bout Agreement (and Spence Bonus Provision therein) constitutes a legally binding contract between Crawford and Top Rank: There was an offer and acceptance by both parties, a meeting of the minds between the Parties as to the terms of the 2019 Kavaliauskas Bout Agreement, and consideration provided by both Parties. The 2019 Kavaliauskas Bout Agreement contains specific terms that determine the obligations of both Parties. The Parties manifested mutual assent to the written terms of the 2019 Kavaliauskas Bout Agreement.

70. During the relevant time period prior to December 31, 2020, Spence was physically able to compete in professional boxing.

71. During the relevant time period prior to December 31, 2020, Top Rank did not offer Crawford the opportunity to participate in a bout with Spence.

72. On or before December 31, 2020, Top Rank did not pay the bonus in excess of $900,000 to Crawford as required under the 2019 Kavaliauskas Bout Agreement. Thus, Top Rank breached its contractual duties when it failed to provide this bonus as promised in the 2019 Kavaliauskas Bout Agreement.

73. All necessary conditions for Top Rank's performance under the Kavaliauskas 2019 Bout

Agreement were satisfied and Top Rank's failure to perform was unjustified and unexcused.

74.     Crawford has performed all conditions, covenants, and promises required on his part to be performed in accordance with the terms and conditions of the 2019 Kavaliauskas Bout Agreement, except for those obligations that were waived by Top Rank or which Crawford was excused or prevented from performing.

75.     As a direct and proximate result of Top Rank's conduct, including its breach of the 2019 Kavaliauskas Bout Agreement, Crawford has suffered significant damages caused by Top Rank's willful breach of said contract in an amount that will be determined at trial, including, but not limited to, an amount in excess of $900,000, which is the bonus Top Rank promised to Crawford, plus pre- and post-judgment interest thereto.

76.     Crawford has and will continue to incur significant and ongoing attorney's fees and costs in this action as a result of Top Rank's actions and failures in an amount in excess of fifteen thousand dollars ($15,000.00).  These attorney's fees and costs are special damages consistent with the Supreme Court of Nevada's holding in *Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n*., 117 Nev. 948, 35 P.3d 634 (2001).  Crawford has been required to engage the services of an attorney to prosecute this action.  The attorney's fees subject to this action are foreseeable damages arising from Top Rank's failures, fraudulent misrepresentation, negligence, breach of contract, bad faith, breach of the implied covenant of good faith and fair dealing, and tortious breach of the implied covenant of good faith and fair dealing. These attorney's fees and costs are the natural result and proximate consequence of Top Rank's injurious conduct and failures. These proximate and foreseeable special damages are hereby specifically plead as special damages in accordance with NRCP 9(g).

### THIRD CAUSE OF ACTION

### FRAUDULENT MISREPRESENTATION

(By Crawford against Top Rank and DOES 1 through 20)

77.     Crawford incorporates by reference each and every allegation set forth in Paragraphs 1 through 55 as if set forth in full herein.

78.     To induce Crawford to enter into the 2019 Kavaliauskas Bout Agreement as set forth more fully in Paragraphs 44-46 above, Top Rank through Arum and DuBoeuf failed to exercise

16

COMPLAINT

1    reasonable care or competence in communicating of its intended businesses dealings concerning the

2    2019 Kavaliauskas Bout Agreement and the Spence-Crawford fight.

3          79.    The Arum and DuBoeuf Spence Representations were false representations when made,

4    or they had an insufficient basis of information for making the representations to Crawford at the time.

5    Arum and DuBoeuf made the false statements on Top Rank's behalf in order to induce Crawford into

6    signing the 2019 Kavaliauskas Bout Agreement.

7          80.    Crawford alleges on information and belief that Top Rank knew or should have known

8    that the Arum and DuBoeuf Spence Representations were false at the time they were made because both

9    Arum and DuBoeuf knew that a Spence-Crawford fight would not, and could not, happen in 2020. On

10    information and belief, Top Rank made the false Arum and DuBoeuf Spence Representations in order

11    to induce Crawford to enter into the 2019 Kavaliauskas Bout Agreement as Top Rank was able to make

12    significant compensation off of that fight.

13          81.    Top Rank knew that the representations were material to the 2019 Kavaliauskas Bout

14    Agreement and to Crawford's decision to enter into the 2019 Kavaliauskas Bout Agreement.

15          82.    Crawford reasonably, materially, and justifiably relied on the false Arum and DuBoeuf

16    Spence Representations and reasonably relied on said representations because Top Rank was his boxing

17    promoter and, at the time, he had no reason to distrust Top Rank.

18          83.    At the time of entering into the 2019 Kavaliauskas Bout Agreement, Crawford had no

19    reason to know of the falsity of the representations.

20          84.    Crawford has been damaged as a result of his justifiable reliance on Top Rank's false

21    representation, in an amount to be proven at trial but in no event less than this Court's jurisdictional

22    minimum. As a direct and proximate result of Top Rank's, Crawford has suffered and will continue to

23    suffer damages in an amount to be proven at trial but in no event less than this Court's jurisdictional

24    minimum.

25          85.    In connection with the above-alleged conduct, Top Rank is guilty of oppression,

26    fraudulent misrepresentation, and malice, by purposefully making false representations to Crawford as

27    set forth herein. Crawford is therefore entitled to punitive damages in an amount appropriate to punish

28    and make an example of Top Rank to the community.

86.     Crawford has and will continue to incur significant and ongoing attorney's fees and costs in this action as a result of Top Rank's actions and failures in an amount in excess of fifteen thousand dollars ($15,000.00). These attorney's fees and costs are special damages consistent with the Supreme Court of Nevada's holding in *Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n*., 117 Nev. 948, 35 P.3d 634 (2001). Crawford has been required to engage the services of an attorney to prosecute this action. The attorney's fees subject to this action are foreseeable damages arising from Top Rank's failures, fraudulent misrepresentation, negligence, breach of contract, bad faith, breach of the implied covenant of good faith and fair dealing, and tortious breach of the implied covenant of good faith and fair dealing. These attorney's fees and costs are the natural result and proximate consequence of Top Rank's injurious conduct and failures. These proximate and foreseeable special damages are hereby specifically plead as special damages in accordance with NRCP 9(g).

## FOURTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

### (By Crawford against Top Rank and DOES 1 through 20)

87.     Crawford incorporates by reference each and every allegation set forth in Paragraphs 1 through 55 as if set forth in full herein.

88.     To induce Crawford to enter into the 2019 Kavaliauskas Bout Agreement as set forth more fully in Paragraphs 44-46 above, Top Rank through Arum and DuBoeuf failed to exercise reasonable care or competence in communicating of its intended businesses dealings concerning the 2019 Kavaliauskas Bout Agreement and the Spence-Crawford fight.

89.     The Arum and DuBoeuf Spence Representations were false representations when made. Arum and DuBoeuf made the false statements on Top Rank's behalf in order to induce Crawford into signing the 2019 Kavaliauskas Bout Agreement.

90.     Crawford alleges on information and belief that Top Rank knew or should have known that the Arum and DuBoeuf Spence Representations were false or it had an insufficient basis of information for making them at the time they were made because both Arum and DuBoeuf knew that a Spence-Crawford fight would not, and could not, happen in 2020. On information and belief, Top Rank made the false Arum and DuBoeuf Spence Representations in order to induce Crawford to enter into the

2019 Kavaliauskas Bout Agreement as Top Rank was able to make significant compensation off of that fight.

91.     Top Rank made these representations negligently and without exercising reasonable care or competence in communicating the falsity of these representations at the time of making such representations, and with the express intent to induce Crawford to act to his detriment in reliance upon these representations.

92.     The representations at the time they were made were material to the 2019 Kavaliauskas Bout Agreement and Crawford's decision to enter into the 2019 Kavaliauskas Bout Agreement.

93.     Crawford reasonably, materially, and justifiably relied on the false Arum and DuBoeuf Spence Representations and reasonably, materially and justifiably relied on said representations because Top Rank was his boxing promoter and, at the time, he had no reason to distrust Top Rank.

94.     At the time of entering into the 2019 Kavaliauskas Bout Agreement, Crawford had no reason to know of the falsity or the representations made by Arum and DuBoeuf on behalf of Top Rank.

95.     Crawford has been damaged as a result of his justifiable reliance on Top Rank's false representation, in an amount to be proven at trial but in no event less than this Court's jurisdictional minimum.  As a direct and proximate result of Top Rank's, Crawford has suffered and will continue to suffer damages in an amount to be proven at trial but in no event less than this Court's jurisdictional minimum.

96.     Crawford has and will continue to incur significant and ongoing attorney's fees and costs in this action as a result of Top Rank's actions and failures in an amount in excess of fifteen thousand dollars ($15,000.00).  These attorney's fees and costs are special damages consistent with the Supreme Court of Nevada's holding in *Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n.*, 117 Nev. 948, 35 P.3d 634 (2001).  Crawford has been required to engage the services of an attorney to prosecute this action.  The attorney's fees subject to this action are foreseeable damages arising from Top Rank's failures, fraudulent misrepresentation, negligence, breach of contract, bad faith, breach of the implied covenant of good faith and fair dealing, and tortious breach of the implied covenant of good faith and fair dealing. These attorney's fees and costs are the natural result and proximate consequence of Top Rank's injurious conduct and failures. These proximate and foreseeable special damages are hereby

specifically plead as special damages in accordance with NRCP 9(g).

## FIFTH CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

(By Crawford against Top Rank and DOES 1 through 20)

97.     Crawford incorporates by reference each and every allegation set forth in Paragraphs 1 through 55 as if set forth in full herein.

98.     As set forth herein, Crawford and Top Rank were parties to the 2018 Agreement.

99.     Top Rank owed a duty of good faith to Crawford.

100.    Top Rank breached that duty by performing in a manner that was unfaithful to the purpose of the contract. Specifically, Arum made the Arum's Statements About Crawford because he was upset that Crawford was likely not going to sign another promotional agreement with Top Rank. Even though Top Rank was Crawford's promoter, Arum went out of his way – during the active promotion of Crawford – to harm his reputation and his ability to seek a lucrative promotional contract with another boxing promoter.  This is not how Top Rank was to perform under the 2018 Agreement.

101.    Crawford expected Top Rank to perform the 2018 Agreement in good faith.  Crawford's justified expectations were denied.

102.    As a direct and proximate result of Top Rank's conduct, Crawford has suffered and will continue to suffer damages in an amount to be proven at trial but in no event less than this Court's jurisdictional minimum.

103.    Crawford has been required to retain the services of an attorney in order to prosecute this claim.  Crawford is entitled to recover his reasonable attorney's fees and costs of suit.

104.    Crawford has and will continue to incur significant and ongoing attorney's fees and costs in this action as a result of Top Rank's actions and failures in an amount in excess of fifteen thousand dollars ($15,000.00).  These attorney's fees and costs are special damages consistent with the Supreme Court of Nevada's holding in *Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n.*, 117 Nev. 948, 35 P.3d 634 (2001).  Crawford has been required to engage the services of an attorney to prosecute this action.  The attorney's fees subject to this action are foreseeable damages arising from Top Rank's failures, fraudulent misrepresentation, negligence, breach of contract, bad faith, breach of the implied

covenant of good faith and fair dealing, and tortious breach of the implied covenant of good faith and fair dealing. These attorney's fees and costs are the natural result and proximate consequence of Top Rank's injurious conduct and failures. These proximate and foreseeable special damages are hereby specifically plead as special damages in accordance with NRCP 9(g).

## SIXTH CAUSE OF ACTION

## TORTIOUS BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

(By Crawford against Top Rank and DOES 1 through 20)

105.    Crawford incorporates by reference each and every allegation set forth in Paragraphs 1 through 55 as if set forth in full herein.

106.    As set forth herein, Crawford and Top Rank were parties to the 2018 Agreement.

107.    Top Rank owed a duty of good faith to Crawford.

108.    Top Rank breached that duty by performing in a manner that was unfaithful to the purpose of the contract. Specifically, Arum made the Arum's Statements About Crawford because he was upset that Crawford was likely not going to sign another promotional agreement with Top Rank. Even though Top Rank was Crawford's promoter, Arum went out of his way – during the active promotion of Crawford – to harm his reputation and his ability to seek a lucrative promotional contract with another boxing promoter.  This is not how Top Rank was to perform under the 2018 Agreement.

109.    Crawford expected Top Rank to perform the 2018 Agreement in good faith.  Crawford's justified expectations were denied.

110.    A special element of reliance or fiduciary duty existed between Crawford and Top Rank where Top Rank was in a superior or entrusted position.

111.    Top Rank breached the duty of good faith by engaging in the above described misconduct.

112.    As a direct and proximate result of Top Rank's conduct, Crawford has suffered and will continue to suffer damages in an amount to be proven at trial but in no event less than this Court's jurisdictional minimum.

113.    In connection with the above-alleged conduct, Top Rank is guilty of oppression, fraudulent misrepresentation, and malice, by making the Arum's Statements About Crawford as set forth

1     herein. Crawford is therefore entitled to punitive damages in an amount appropriate to punish and make
2     an example of Top Rank to the community.

3          114.     Crawford has and will continue to incur significant and ongoing attorney's fees and costs
4     in this action as a result of Top Rank's actions and failures in an amount in excess of fifteen thousand
5     dollars ($15,000.00). These attorney's fees and costs are special damages consistent with the Supreme
6     Court of Nevada's holding in *Sandy Valley Assocs. v. Sky Ranch Estates Owners Ass'n*., 117 Nev. 948,
7     35 P.3d 634 (2001). Crawford has been required to engage the services of an attorney to prosecute this
8     action. The attorney's fees subject to this action are foreseeable damages arising from Top Rank's
9     failures, fraudulent misrepresentation, negligence, breach of contract, bad faith, breach of the implied
10    covenant of good faith and fair dealing, and tortious breach of the implied covenant of good faith and
11    fair dealing. These attorney's fees and costs are the natural result and proximate consequence of Top
12    Rank's injurious conduct and failures. These proximate and foreseeable special damages are hereby
13    specifically plead as special damages in accordance with NRCP 9(g).

14                                    **PRAYER FOR RELIEF**

15          WHEREFORE, Crawford prays for the following relief and requests that this Court enter
16    judgment in favor of Crawford and against defendant Top Rank by:

17          A.     Finding that Top Rank breached its contractual duties owed to Crawford;

18          B.     Awarding monetary damages in an amount to be proven at trial and over the jurisdictional
19                    minimum of this Court;

20          C.     For punitive damages in an amount to be proven at trial;

21          D.     Awarding interest in an amount according to proof;

22          E.     Awarding Crawford's attorney's fees and costs as special damages pursuant to *Sandy*
23                    *Valley Assocs. v. Sky Ranch Estates Owners Ass'n.,* 117 Nev. 948, 35 P.3d 634 (2001)
24                    and NRCP 9(g); and

25    . . .

26    . . .

27    . . .

28    . . .

COMPLAINT

F.   Awarding Crawford such further legal or equitable relief as this Court deems just and

proper.

DATED this 12th day of January, 2022.

CARBAJAL LAW

By: */s/ Hector J. Carbajal II*
    HECTOR J. CARBAJAL II, ESQ.
    Nevada Bar No. 6247
    10001 Park Run Drive
    Las Vegas, Nevada 89145
    *Attorneys for Plaintiffs*

Respectfully submitted,
Bryan J. Freedman (CA SBN 151990)
Brian E. Turnauer (CA SBN 214768)
FREEDMAN + TAITELMAN, LLP
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Phone: (310) 201-0005
Fax: (310) 201-0045
Email: bfreedman@ftllp.com
Email: bturnauer@ftllp.com
*Attorneys for Terence Crawford*

COMPLAINT

# EXHIBIT B

Declaration of Top Rank, Inc.'s General Counsel Jeremy Koegel

1  **O'MELVENY & MYERS LLP**
   Daniel M. Petrocelli, CA Bar No. 97802*
2  dpetrocelli@omm.com
   David Marroso, CA Bar No. 211655*
3  dmarroso@omm.com
   Joseph Guzman, CA Bar No. 310493*
4  jguzman@omm.com
   1999 Avenue of the Stars, 8th Floor
5  Los Angeles, CA 90067
   Phone  (310) 553-6700
6  Fax     (310) 246-6779
   *Pro hac vice application forthcoming
7

8  **HONE LAW**
   Eric D. Hone, NV Bar No. 8499
9  ehone@hone.law
   Jamie L. Zimmerman, NV Bar No. 11749
10 jzimmerman@hone.law
   701 N. Green Valley Parkway, Suite 200
11 Henderson, NV 89074
   Phone  702-608-3720
12 Fax     702-703-1063

13 *Attorneys for Defendant Top Rank, Inc.*

14                 UNITED STATES DISTRIC COURT

15                     DISTRICT OF NEVADA

16 TERENCE CRAWFORD, an individual,          | Case No.

17                      Plaintiff,

18       vs.                                  **DECLARATION OF TOP RANK, INC.'S GENERAL COUNSEL JEREMY KOEGEL IN SUPPORT OF PETITION FOR REMOVAL**

19 TOP RANK, INC., a Nevada corporation; and
   Does 1 through 20, inclusive,
20
                        Defendants.
21

22       I, JEREMY KOEGEL, declare under penalty of perjury as follows:

23       1.      I am employed by Defendant Top Rank, Inc. ("Top Rank") as its General

24 Counsel, and have held that position since December 2020.  In that capacity, I am familiar with

25 Top Rank's business and records practices as they pertain to this Declaration, which is submitted

26 in connection with Top Rank's Petition for Removal.  In particular, I am familiar with the

27 process by which Top Rank is served with legal filings, including complaints.  I have personal

28 knowledge of the facts set forth herein, and if called upon to testify, I could and would testify

                                    1

1  competently thereto.

2      2.     I understand that on January 12, 2022 Plaintiff Terence Crawford filed a

3  complaint ("the Complaint") in the Eighth Judicial District Court, Clark County, Nevada, Case

4  No. A-22-846568-B, naming Top Rank and Does 1 through 20, inclusive, as defendants.  A true

5  and accurate copy of the Complaint is attached to Top Rank's Petition for Removal as Exhibit A.

6      3.     Top Rank's registered agent for service in Nevada is Corporation Service

7  Company ("CSC").  At the time of this declaration, I have not received a notification from CSC

8  that CSC had been served with the Complaint.

9      4.     On January 15, 2022, I checked Top Rank's account with CSC and did not

10 identify any information indicating CSC had been served with the Complaint.

11     5.     At the time of this declaration, to my knowledge, Top Rank has not been served

12 with the Complaint.

13     I declare under penalty of perjury that the foregoing is true and correct.

14     Executed on the 15th day of January, 2022.

15

16                                     By: _____

17                                          JEREMY KOEGEL

18

19

20

21

22

23

24

25

26

27

28



# 2022.01.15 FINAL Declaration of Jeremy Koegel - UPDATED

Final Audit Report                                                    2022-01-15

| | |
|---|---|
| Created: | 2022-01-15 |
| By: | Katrina Hone at Hone Law (khone@hone.law) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAArGiTDwJ4Wb7WzmCPwQVef-asEvb9-f2r |

## "2022.01.15 FINAL Declaration of Jeremy Koegel - UPDATED" History

Document created by Katrina Hone at Hone Law (khone@hone.law)
2022-01-15 - 6:28:35 PM GMT- IP address: 72.193.181.38

Document emailed to Jeremy Koegel (jkoegel@toprank.com) for signature
2022-01-15 - 6:28:54 PM GMT

Email viewed by Jeremy Koegel (jkoegel@toprank.com)
2022-01-15 - 6:29:06 PM GMT- IP address: 107.77.231.5

Email sent to dekova@hone.law bounced and could not be delivered
2022-01-15 - 6:29:21 PM GMT

Document e-signed by Jeremy Koegel (jkoegel@toprank.com)
Signature Date: 2022-01-15 - 6:29:33 PM GMT - Time Source: server- IP address: 76.174.42.25

Agreement completed.
2022-01-15 - 6:29:33 PM GMT

Adobe Sign

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
TERENCE CRAWFORD, an individual.

## DEFENDANTS
TOP RANK, INC., a Nevada corporation; and Does 1 through 20, inclusive,

**(b)** County of Residence of First Listed Plaintiff __Douglas County, NE__
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant __Clark County, NV__
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Hector J. Carbajal II, Carbajal Law, 10001 Park Run Drive, Las Vegas NV 89145  702-846-0040

Attorneys *(If Known)*
Eric D. Hone, Jamie L. Zimmerman, Hone Law, 701 N. Green Valley Parkway, Suite 200, Henderson, NV 89074  702-608-3720

## I. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [X] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [X] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [X] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [ ] 1 Original Proceeding
- [X] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1332, 1441, 1446
Brief description of cause: Breach of contract, fraudulent misrepresentation, negligent misrepresentation, breach of implied covenant of good faith and fair dealing, tortious breach of implied covenant of good faith and fair dealing

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ >$5,400,000

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE 01/15/2022

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____